IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 11, 2006

## CLIFFORD SIMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26437     John P. Colton, Jr., Judge**

———

**No. W2004-02167-CCA-R3-PC  - Filed May 30, 2006**

———

The petitioner, Clifford Sims, appeals from the denial of his petition for post-conviction relief, arguing that his guilty pleas were unknowing and involuntary and that he was denied the effective assistance of counsel.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Lowe Finney, Jackson, Tennessee (on appeal) and Paul Springer, Memphis, Tennessee (at hearing), for the appellant, Clifford Sims.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Andre Thomas, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner and a codefendant, Willie Williams, were charged in eight separate indictments with seven counts of attempted first degree murder, one count of first degree felony murder, and one count of first degree premeditated murder based on a November 23, 1998, incident in which the petitioner, his codefendant, and two other men fired upon a second group of men outside a Memphis nightclub.  During the ensuing exchange of gunfire, one of the men in the petitioner's group, Darrius Wesby,[1] was shot in the back of the head and killed.  On May 10, 2001,

———

[1]This individual's first name is spelled, variously, as "Derious" in the transcript of the guilty plea hearing, "Darrius" in the indictment and in the petition for post-conviction relief, and "Darias" in the transcript of the evidentiary
(continued...)

the petitioner entered guilty pleas to seven counts of attempted second degree murder and an <u>Alford</u> guilty plea to one count of second degree murder. Pursuant to the terms of his plea agreement, he was sentenced as a Range II, multiple offender to nineteen years for each of the attempted second degree murder convictions and to nineteen years as a violent offender for the second degree murder conviction, with all sentences to be served concurrently, for an effective sentence of nineteen years at 100%.

At the guilty plea hearing, the prosecutor set out the factual basis for the pleas:

Had the matter proceeded to trial, Your Honor, the State would have introduced evidence to show on November 23rd, 1998, Willie Williams, [the petitioner], Lee Chester Williams and Derious Wesby went to a location of 3092 Director's Row here in Shelby County, Tennessee, a location very close to the Mirage Night Club.

It was approximately 3:30 in the morning on Monday, the 23rd, and the purpose for them going to that location was because Willie Williams and Derious Wesby had had an encounter, an altercation the previous night with several individuals, and Mr. Wesby had continually talked about getting back at these individuals.

So Mr. Williams and [the petitioner], Mr. Wesby and Mr. Lee Chester Williams armed themselves with 9 millimeter weapons. The victim in this cause, Mr. Derious Wesby, armed himself with a 30 caliber M-1 Carbine. They walked down an alley and began to shoot at the individuals in the second group; those individuals are individually listed in Indictments 66 through 72.

One of the 9 millimeter weapons being fired by Mr. Williams, [the petitioner], or Mr. Lee Chester Williams, contained a 9 millimeter round that struck Mr. Wesby in the back of the head killing him instantly. There were several other individuals in the second group that received gun fire wounds, some from [the petitioner's] group and some from within their own group.

[The petitioner] was taken into custody and gave a statement to his participation in this event. He did say in his statement, however, that the other group began to open fire on them first and that they were just returning fire. But we would submit to the Court that the proof and the logistics and the evidence would show that these individuals parked behind a building, walked down a dark alley in an attempt to ambush the second group of individuals.

---

[1](...continued)
hearing. We have chosen to use the spelling contained in the indictment.

On May 10, 2002, the petitioner filed a *pro se* petition for post-conviction relief in which he claimed that he was denied the effective assistance of trial counsel and that his guilty pleas were unknowing and involuntary. The petitioner alleged a number of different instances of ineffective assistance in his *pro se* petition, but on appeal essentially confines himself to arguing that trial counsel was ineffective for failing to adequately investigate his claim of self-defense and for failing to explain the guilty plea agreement to him. The petitioner asserts that trial counsel's failure to explain the plea agreement, including what an Alford plea entailed, renders his guilty pleas unknowing and involuntary. He, additionally, asserts that the record does not demonstrate he "admitted to all of the necessary facts to provide a sufficient factual basis to support the plea."

Post-conviction counsel was appointed, and an evidentiary hearing was held on April 27-28, 2004. John Billings, the private investigator who had been appointed to assist trial counsel in investigating the death penalty case, testified that he met with the petitioner four to six times and that trial counsel was present at all but one or two of those meetings. In addition, trial counsel met with the petitioner on other occasions when Billings was not present. During his meetings with the petitioner, Billings discussed the progress of the investigation, including potential witnesses to be located and interviewed. He said he ultimately located and interviewed approximately six individuals, including some whose statements substantiated the petitioner's claim that he had fired his weapon in self-defense after members of the other group opened fire first. Billings stated that he received copies of discovery, but the discovery did not include the statements of the second group of men involved in the shooting. To his knowledge, trial counsel never received those statements, either. He said the petitioner never discussed pleading guilty with him and he was surprised when he learned, after the fact, that the petitioner had pled guilty because he "felt that [they] had not completed [their] investigation."

The petitioner's father, Clifford Sims, testified that during the time leading up to the entry of the petitioner's guilty pleas the petitioner consistently maintained his innocence and expressed his desire to go to trial. Sims also recalled, however, that the petitioner often talked about the "death penalty and life imprisonment." He testified that when the petitioner told him he was going to plead guilty he tried to dissuade him, but he guessed that "this death penalty and this life sentence . . . sort of frustrated things."

The petitioner testified that during the two and a half to three years that elapsed between his indictment and his guilty plea hearing trial counsel's investigator met with him several times, but trial counsel only visited him twice. He said trial counsel's first visit occurred sometime in 1999 when counsel brought him "a lot of motions" and told him that his case appeared to be either a case of criminally negligent homicide or reckless endangerment. He said the second visit did not occur until May 2002 when counsel came to convince him to accept the State's plea offer. He recalled that counsel told him that nineteen years was not a lot of time for a young man to serve and that he could risk getting the death penalty or life imprisonment if he went to trial. The petitioner testified that the investigators informed him of possible witnesses and provided him with copies of their statements, but trial counsel never discussed any defense strategies with him. According to the petitioner, trial counsel did, however, give him a detailed explanation of the law of felony murder. The petitioner

said that, other than the statements the investigators gave him, he received no discovery information until after he had already entered his guilty pleas.

The petitioner testified that he had obtained his G.E.D. and was twenty-seven years old when he entered his guilty pleas. He acknowledged he was "pretty intelligent" but said he felt coerced by trial counsel into pleading guilty. He stated that he learned about Alford pleas by researching case law and that when he told counsel he wanted to enter an Alford plea on the murder charge, trial counsel entered the plea without explaining what it entailed. When asked what his understanding was at the time of the guilty plea hearing, he replied: "That I wasn't guilty of no murder. Really, as far as all of the charges I wasn't guilty. I just pled no contest and just received nineteen years." The petitioner claimed not to remember numerous statements he had made at his guilty plea hearing, including that trial counsel had met with him at least twenty times, that he was satisfied with counsel's representation, and that he was admitting his guilt for the offenses. Finally, the petitioner acknowledged he had pled guilty to two or three drug charges in the past but said none had involved an Alford plea.

Trial counsel testified that he had been licensed as an attorney since 1963, had been handling capital cases since 1963, 1964, or 1965, and had been capital qualified under Rule 13 of the Rules of the Tennessee Supreme Court for as long as the rule had been in existence. His recollection was that the trial court appointed him in the place of the petitioner's original attorney when the State filed its notice of intent to seek the death penalty. Trial counsel testified that during the course of his representation he met with the petitioner four or five times and extensively discussed with him the facts of the case, the proof against him, and his defense strategy. He said he was somewhat limited in his defense because of the statement the petitioner had given to police, in which he admitted that he and his companions had armed themselves and gone to search for the men who had angered Wesby by bumping Wesby's car the previous Saturday. Trial counsel stated that he filed a motion to suppress the statement, which the trial court had been scheduled to hear on the same date that the case was set for trial. Trial counsel testified, however, that he did not believe he would have been successful in getting the statement suppressed.

Trial counsel testified that the petitioner's codefendant would have testified against the petitioner and that he was positive he shared that information with the petitioner. He stated that he discussed with the petitioner the ramifications of accepting the plea agreement versus going to trial and pointed out to the petitioner the benefits of the plea agreement, but it was the petitioner's decision to plead guilty. When asked whether he coerced or induced the petitioner into accepting the plea, trial counsel replied:

> No[,] I didn't induce, or coerce, I just tell him what he's facing. I probably did tell him, I'm guessing, giving him my honest opinion about the nineteen years. That he's a young man, you know, so to speak and he'd see day light again. I've used that term before. I don't specifically remember telling him, but that's probably the way I felt, you know.

I mean, like I said before, when you talk to twelve people and there's a shoot out and bullets going all around there and somebody's killed. Albeit, you don't know how a jury's going to view it.

Trial counsel testified that he was ready and prepared to go to trial and had located a witness who would have testified on the petitioner's behalf that the other group had fired first. As he recalled, he shared the information about that witness with the prosecutor, and he believed that it was what motivated the State to offer the plea bargain. Trial counsel said he discussed the <u>Alford</u> plea with the petitioner and it was the petitioner's decision to enter an <u>Alford</u> plea to second degree murder. In his opinion, the petitioner was "very intelligent."

On July 30, 2004, the post-conviction court entered an order denying the petition for post-conviction relief. The court found, among other things, that trial counsel had adequately investigated and prepared for the case and that the petitioner had failed to show that counsel was deficient in his representation. The court further found that the transcript of the guilty plea hearing demonstrated that the petitioner had entered his pleas knowingly, voluntarily, and intelligently.

## ANALYSIS

On appeal, the petitioner raises the interrelated issues of whether the post-conviction court erred in finding that his guilty pleas were knowing and voluntary and that he received the effective assistance of counsel. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. <u>See</u> Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. <u>See</u> <u>Tidwell v. State</u>, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. <u>See</u> <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. <u>See</u> <u>Ruff v. State</u>, 978 S.W.2d 95, 96 (Tenn. 1998).

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. <u>See</u> <u>Fields v. State</u>, 40 S.W.3d 450, 458 (Tenn. 2001); <u>Burns v. State</u>, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); <u>see</u> <u>State v. Taylor</u>, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The <u>Strickland</u> standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that trial counsel was ineffective for failing to properly investigate or pursue any defenses in his case and for failing to explain his guilty pleas. The record, however, supports the post-conviction court's finding that the petitioner received the effective assistance of counsel. Trial counsel testified that he met with the petitioner four or five times, stayed in constant contact with the investigator assigned to the case, and thoroughly discussed the facts and theory of defense with the petitioner. Trial counsel also said that he fully explained the plea agreement to the petitioner, including what an Alford plea entailed. The transcript of the guilty plea hearing supports trial counsel's testimony. At the guilty plea hearing, trial counsel informed the trial court in the petitioner's presence:

Now, of course, I have discussed this in detail with [the petitioner] about, you know, what is meant by an Alford plea and a plea of nolo contendere even though he could enter that type of plea under our system of jurisprudence, nevertheless, of course, it's still on his record, Your Honor. And from a statement of the facts you could see how somebody, you know, that's not a lawyer might want to enter a plea under Alford vs. North Carolina or a nolo contendere.

The petitioner has not shown either a deficiency in counsel's representation or that, were it not for counsel's alleged deficiencies, he would not have accepted the State's nineteen-year offer but instead would have insisted on proceeding to trial, where he risked receiving the death penalty or life imprisonment if convicted of the first degree murder. We conclude, therefore, that the post-conviction court did not err in finding that the petitioner failed to meet his burden of establishing that he was denied the effective assistance of counsel.

The petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. Specifically, he asserts that the record does not show that there was a factual basis for the pleas or that he understood what an Alford plea entailed. Before a guilty plea may be accepted, there must be an affirmative showing that the petitioner voluntarily and knowingly entered the plea. Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 167, 27 L. Ed. 2d 162 (1970), the United States Supreme Court held that a defendant may enter a plea of guilty while at the same time maintaining his innocence if he determines that it is in his best interest to do so. In such a case, the standard remains "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id. at 31, 91 S. Ct. at 164. The Alford plea is a viable option to a defendant in Tennessee, and a trial court may accept a defendant's "best interest" or Alford plea so long as there is a factual basis for the plea. See Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985); State v. Williams, 851 S.W.2d 828, 830-31 (Tenn. Crim. App. 1992)).

Despite the petitioner's argument to the contrary, the facts recited by the prosecutor and stipulated by defense counsel establish a factual basis for the petitioner's murder plea. Trial counsel's testimony established that the petitioner was fully informed of the consequences of his pleas and that he had discussed with him what it meant to enter an Alford plea to second degree murder. Trial counsel also testified that he thought that the petitioner was very intelligent. The petitioner himself acknowledged that he was intelligent, had prior experience with the criminal court

system, had obtained his G.E.D., and had researched on his own the law with respect to Alford or best interest pleas. Furthermore, the transcript of the guilty plea hearing reflects that the petitioner responded appropriately to the trial court's questions during the lengthy and detailed colloquy, answering, among other things, that he understood the various constitutional rights he was giving up by pleading guilty, was fully satisfied with counsel's representation, and understood the guilty plea agreement. The petitioner, additionally, answered affirmatively when the trial court asked if he was admitting his guilt to the seven attempted second degree murder offenses and wished to enter a best interest plea to the second degree murder after weighing the State's proof against him.

Moreover, even if the record had not established that the petitioner understood what an Alford plea was, that fact alone would not render his guilty plea involuntary. We have previously explained that a defendant's failure to understand the difference between a standard guilty plea and an Alford plea does not make his Alford plea involuntary:

> The petitioner contends that he did not know and the trial court did not explain the concept of a "best interests" or Alford plea. The record supports this contention. All of the remarks concerning a possible Alford plea were between counsel and the trial judge. The trial court could have and probably should have addressed the petitioner directly and explained the meaning of the terms. However, we cannot see how the failure to understand a legal term such as Alford or how the inability to follow the discussion between counsel and the bench would render the guilty plea involuntary. A "best interests" plea is treated exactly like any other guilty plea except for the defendant's protestation of innocence. It made no difference to the petitioner whether the trial court accepted his plea as an Alford plea or a garden-variety guilty plea. If the petitioner had the information required to make an intelligent decision and if he understood the consequences of pleading guilty to first-degree and second-degree murder, then he entered his plea knowingly and intelligently despite his lack of specific knowledge of North Carolina v. Alford. We find that the record supports the post-conviction court's finding that the petitioner knowingly entered his pleas and that he understood the consequences of his actions.

Hicks, 983 S.W.2d at 247-48 (footnote omitted).

We, therefore, conclude that the record in this case fully supports the post-conviction court's finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to show either that trial counsel was ineffective or that his guilty pleas were unknowing and involuntary. Accordingly, we

affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE